# IN THE DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| South Carolina Public Service Authority,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>Westinghouse Electric Company, LLC, *as reorganized pursuant to Chapter 11 of the Bankruptcy Code*; Brookfield Business Partners L.P.; John Doe, Jane Doe, Richard Roe, and Mary Roe, who are fictitious names representing all unknown persons or entities who may claim an interest,<br><br>　　　　　　　Defendants. | C/A No.: 2019-cv-1432-RMG<br><br>**COMPLAINT**<br>**Action to Quiet Title & for Declaratory Judgment** |

　　　　The South Carolina Public Service Authority (Santee Cooper) brings this Complaint, by and through its undersigned counsel, requesting the Court declare it has sole title to certain property for construction and operation of Units 2 and 3 of the V.C. Summer Nuclear Generating Station (VCS Units 2 and 3). That certain property includes equipment, nuclear components, and construction commodities for which Santee Cooper has paid, taken possession and control, preserved, maintained, and protected since the cessation of construction of VCS Units 2 and 3. In support of its claims Santee Cooper alleges the following:

## PARTIES

　　　　1.　　Santee Cooper is a body corporate and politic created by the South Carolina General Assembly, S.C. Code Ann. §§ 58-31-10 et seq. (Enabling Statute).

　　　　2.　　Westinghouse Electric Company, LLC (Westinghouse) is a Delaware limited liability company, with its primary office at 1000 Westinghouse Drive, Cranberry Township,

Pennsylvania 16066. Westinghouse was reorganized pursuant to Chapter 11 of the Bankruptcy Code effective August 1, 2018.

3. Brookfield Business Partners L.P. (Brookfield) is a Bermuda exempted limited partnership registered under the Bermuda Limited Partnership Act 1883, as amended, and the Bermuda Exempted Partnerships Act 1992, as amended. Its primary office is located at 73 Front Street, 5th Floor, Hamilton HM 12, Bermuda. Brookfield owns and operates business services and industrial operations. Brookfield maintains offices, owns and operates business services, and conducts industrial operations in numerous locations throughout the United States.

4. Brookfield acquired Westinghouse, as reorganized, on August 1, 2018. The relationship between Brookfield and Westinghouse, in terms of the division of control and authority, since that acquisition remains unclear.

5. Upon information and belief, Westinghouse and Brookfield carry on substantial business activities in South Carolina, including owning significant real property within South Carolina.

6. John Doe, Jane Doe, Richard Roe, and Mary Roe are fictitious names representing all unknown persons or entities who may claim an interest in the equipment, nuclear components, and construction commodities for which Santee Cooper has paid, taken possession and control, preserved, maintained, and protected since the cessation of construction of VCS Units 2 and 3.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the value of the property at issue, exclusive of interest and costs, exceeds $75,000.00 as specified in 28

U.S.C. § 1332, and this matter contains issues of law and fact between citizens of different states.

8.  The Court has subject matter jurisdiction over the claims asserted in this action and in rem jurisdiction because the equipment at issue in this Complaint is located in South Carolina.

9.  Venue is proper in this District and in the Charleston Division pursuant to 28 U.S.C. § 1391(b)(2) and Local Rule 3.01(A)(1) because the property is situated in South Carolina and a substantial part of the transactions or occurrences occurred within the Charleston Division of this District. Venue is further based upon § 58-31-10 of the South Carolina Code establishing Berkeley County as the principal place of business for Santee Cooper.

## FACTUAL ALLEGATIONS

10. Santee Cooper generates, transmits, and distributes electricity to customers throughout the state of South Carolina through various generation facilities employing different types of energy resources.

### *Affiliation with Santee Cooper as a Result of V.C. Summer Nuclear Generating Station Units 2 & 3*

11. In 2006, Santee Cooper entered into an agreement with South Carolina Energy & Gas Company (collectively Owners) to explore the possibility of constructing and operating two new nuclear power generating units at the existing V.C. Summer Nuclear Generating Station site near Jenkinsville, South Carolina in an effort to provide an additional source of energy for South Carolina.

12. In 2008, the Owners entered into the Engineering, Procurement and Construction Agreement (EPC) with Westinghouse and Stone & Webster, Inc. (collectively the Consortium)

under which the Owners sought to develop, license, procure, and have constructed a nuclear-fueled electricity generation facility, and the Consortium was to provide, among other things, the design, engineering, procurement, and installation of equipment and materials, and construction and testing of VCS Units 2 and 3.

13. In 2012, the Owners gave notice to the Consortium to proceed with constructing VCS Units 2 and 3.

14. The Equipment includes machinery, computer hardware and its associated software, apparatus, components, articles, materials, systems and structures, and items of any kind that were to become a permanent part of VCS Units 2 and 3.

15. At the time, the Owners were obligated to pay when construction milestones were completed, which created cash flow for procurement of permanent plant equipment and materials. The Owners made payments in excess of $800 million for completion of construction milestones. The Owners were also obligated to pay for other Equipment, pursuant to an equipment milestone schedule, meaning, by way of example, that payments were earned at stages such as issuance of purchase order to manufacturer, completion of various stages of fabrication, or delivery. Westinghouse received approximately $1,485,000,000.00 in equipment milestone payments.

16. Units 2 and 3 were originally scheduled to be substantially completed by April 1, 2016 and January 1, 2019, respectively, but the project experienced significant delays going back to 2013. As a result, substantial completion dates were modified several times by agreement between 2012 and 2014. These significant delays were caused by Westinghouse's failure to complete work as promised.

17. On October 27, 2015, the Owners agreed to amend the EPC, which was intended to resolve outstanding disputes, modify the Consortium structure, amend key terms, and revise substantial completion dates.

18. The October 2015 Amendment, which became effective on December 31, 2015, among other things, provided the Owners with an irrevocable option to amend the EPC to fix the total amount the Consortium would be paid for its entire scope of work on the project (Fixed Price Option).

19. Pursuant to the October 2015 Amendment, the Owners made substantial payments to Westinghouse in 2016, totaling more than One Billion Dollars ($1,000,000,000.00).

20. In 2016, the Owners exercised the Fixed Price Option, which effectively replaced the invoicing and billing procedures stated in the EPC. The South Carolina Public Service Commission approved the exercise of the Fixed Price Option in November 2016.

21. On March 27, 2017, anticipating an imminent Westinghouse bankruptcy and in response to Westinghouse's professed financial inability to complete the project, Santee Cooper's Board of Directors authorized Santee Cooper's management to enter into an Interim Assessment Agreement (IAA) with SCE&G and Westinghouse. The purpose of the IAA was to continue construction operations, at the direct expense of the Owners, in order to allow the Owners to undertake an analysis of the time and cost that would be required to complete the construction of VCS Units 2 and 3 after Westinghouse filed for bankruptcy.

22. On March 28, 2017, Santee Cooper, SCE&G, and Westinghouse entered into the IAA, which was later amended twice to allow for additional time for the Owners to evaluate the actual cost and time required to finish constructing VCS Units 2 and 3.

23. On March 29, 2017, Westinghouse filed a bankruptcy petition pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, Case No. 17-10751-MEW, breaching the EPC and giving Westinghouse to the option to reject executory contracts, such as the EPC.

24. On March 30, 2017, the Bankruptcy Court for the Southern District of New York approved the IAA.

25. During the term of and pursuant to the IAA, the Owners paid Westinghouse advance milestone payments to continue working on VCS Units 2 and 3; these payments covered all of Westinghouse's costs, including construction materials and equipment.

26. During the IAA term, Fluor Corporation (a primary subcontractor of Westinghouse) would not continue working unless it received payment in excess of $50,000,000.00, representing the amount of Westinghouse's outstanding invoices. Because the project could not proceed without Fluor, the Owners agreed, and that amount was paid directly by the Owners for future work.

27. On July 31, 2017, after analyzing newly-discovered information (i.e., learning Westinghouse mischaracterized its progress, the existence of a fully-integrated resource plan, and its ability to complete the project), Santee Cooper's Board of Directors determined it was in Santee Cooper's best interests to suspend construction of VCS Units 2 and 3; notice terminating the IAA was provided to Westinghouse. On the same day, SCE&G informed Westinghouse it was abandoning the project, as opposed to suspending construction. After it was announced construction was ceasing, Westinghouse walked off the site.

28. After construction was suspended, in the absence of Westinghouse taking any action to secure and protect the nuclear components and construction commodities necessary for construction, Santee Cooper undertook responsibility to marshal and preserve the same.

29. As a part of the bankruptcy, Westinghouse asked for permission to collect certain identified items that it owned from the VCS site. The Owners granted the requested permission. Westinghouse retrieved certain identified construction equipment that it asserted it owned which had been left when they walked off the site. Despite having the benefits of (a) a site visit to collect anything it claimed, (b) time (over two years), and (c) an entire bankruptcy proceeding ably handled by the Southern District of New York, Westinghouse never claimed – officially or unofficially – it owned any of the Equipment. In fact, it was only after Brookfield acquired Westinghouse that any ownership interest in the Equipment was made.

30. On December 13, 2018, the Owners entered an agreement wherein SCE&G effectively ceded its ownership interest in the Equipment and other items to Santee Cooper. This Forbearance Agreement was approved by the Public Service Commission of South Carolina and publicly recorded on March 25, 2019 at Book 1358 Page 152-173 in the Office of the Register of Deeds for Fairfield County.

31. The Forbearance Agreement provides that SCE&G irrevocably abandoned its rights to certain assets, including the Equipment, in favor of Santee Cooper. As a result, the Forbearance Agreement gave Santee Cooper one hundred percent (100%) of the Owners' interest in the Equipment.

32. The Owners, now solely Santee Cooper, paid for and fully own the Equipment; in fact, Westinghouse received payments far in excess of the cost of the Equipment.

33. After construction was suspended and the IAA terminated, Santee Cooper developed and undertook a Maintenance, Preservation, and Documentation (MPD) Program for the Equipment in order to preserve its functionality and value.

34. The Owners incurred costs of almost $1,493,000.00 to marshal the Equipment into one secure location, and Santee Cooper spent $5,000,000.00 in the process of maintaining and preserving the Equipment, and will continue to spend a similar amount annually until the Equipment is sold.

35. Consistent with the fact it does not have any right to the Equipment, Westinghouse has neither contributed nor offered to contribute to the maintenance or preservation of the Equipment, a regulatory-required and essential task to preserve the value and functionality.

36. Westinghouse created and has retained certification documentation for most of the Equipment as required by certain regulations governing equipment used in nuclear facilities and the EPC (Certification Documents).

37. These Certification Documents, which act as a chain of custody for the construction, transfer, and inspection of the Equipment, are necessarily a part of the Equipment owned by Santee Cooper.

*Westinghouse Bankruptcy*

38. As part of Westinghouse's Bankruptcy, the Owners entered into an Amendment to the Interim Assessment Agreement on April 28, 2017 (the Amended IAA).

39. Pursuant to the Amended IAA, Santee Cooper, in coordination with SCE&G, agreed to act, and did so act, as the principal contracting party on all "(i) existing purchase orders, vendor contracts, and Subcontracts (as defined in the EPC) and (ii) new purchase orders,

new vendor contracts, Subcontracts, or change orders to existing purchase orders, vendor contracts or Subcontracts." (the IAP Contracts).

40. Westinghouse was merely appointed as the Owners' agent for purposes of identifying, entering into, and modifying these IAP Contracts. The Owners agreed to and did pay all costs associated with such IAP Contracts.

41. On January 12, 2018, a Plan Funding Agreement (PFA) for the Westinghouse Bankruptcy was put into place.

42. On August 1, 2018, the PFA transaction closed, and Westinghouse began its emergence from Chapter 11. That day, Brookfield also announced it had completed its 100% acquisition of Westinghouse.

43. As part of its Plan for Reorganization, Westinghouse did not assume the EPC; thus, the EPC was rejected as a matter of law on August 1, 2018. This constitutes a Bankruptcy Court-sanctioned breach of the EPC by Westinghouse. Pursuant to 11 U.S.C. § 365, the effective date of the breach was the moment before Westinghouse filed for Chapter 11 bankruptcy on March 29, 2017.

44. Pursuant to 11 U.S.C. § 521, a debtor in Chapter 11 bankruptcy proceedings, such as Westinghouse formerly, is required to identify the property of the estate and file a schedule of assets and liabilities and a statement of financial affairs. For purposes of Bankruptcy Code and the schedule of assets and liabilities a Debtor is required to file, the term property of the estate at 11 U.S.C. §541 is understood to be a broad term that includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative and derivative" *In re Yonkius*, 996 F.2d 866, 869 (7th Cir. 1993).

45. Despite this statutory requirement and contrary to Westinghouse's post-bankruptcy claim to the Equipment, Westinghouse failed to include the Equipment at issue in the Bankruptcy Proceeding for the benefit of its creditors.

46. In fact, on more than one occasion since Westinghouse's exit from Bankruptcy, Westinghouse has specifically disclaimed ownership to the property at issue in the Adversary Complaint[1].

47. The Equipment at issue is and has been primarily in the possession and control of Santee Cooper. Westinghouse is not in possession of any of the equipment at issue in this case.

48. Since acquiring Westinghouse in August 2018, Brookfield and Ron Bloom (the Managing Partner and Vice Chair of Brookfield Asset Management, Inc.'s Private Equity Group), appear to be promulgating and controlling Westinghouse's newly-created claim of ownership to the Equipment, including taking positions that directly contradict Westinghouse's pre-Brookfield stances.

## FOR A FIRST CAUSE OF ACTION
### (Action to Determine or Quiet Title to Property Located in South Carolina)

49. Santee Cooper repeats and realleges each and every preceding allegation as if repeated verbatim herein.

50. Santee Cooper is and has been in possession and ownership of the Equipment in South Carolina since such it was delivered to or manufactured in South Carolina for use on the VCS Units 2 and 3.

---

[1] Despite having exited Bankruptcy, Westinghouse filed an adversary complaint against Santee Cooper on April 5, 2019 in the Bankruptcy Court of the Southern District of New York, seeking an order from the Court that it has legal title to equipment and that it is entitled to recover that equipment from Santee Cooper. Santee Cooper disputes the propriety of this Adversary Complaint, and a Motion to Dismiss the same is pending as of the date of this filing.

51. Santee Cooper paid Westinghouse for the Equipment; in fact, Westinghouse received far more than the Equipment's value from the Owners.

52. Westinghouse did not include the Equipment in its Bankruptcy estate.

53. Santee Cooper has spent more than $5,000,000.00 and will continue to spend a similar amount annually in preserving and maintaining the Equipment.

54. Westinghouse has neither contributed nor offered to contribute to the maintenance and preservation of the Equipment, a regulatory-required and essential task to preserve the value of the Equipment.

55. When Westinghouse walked off the construction site, Westinghouse left unpaid over $300,000,000.00 for worked performed and materials purchased in the construction of VCS Units 2 and 3, resulting in mechanic's and materialmen's liens being filed against the Owners in that amount.

56. Notwithstanding the above, Santee Cooper is informed and believes that Defendants have claimed or will attempt to assert some rights affecting ownership or title, whether in whole or in part, to the Equipment in South Carolina.

57. However, such claims are without legal or factual foundation; additionally, Santee Cooper is informed and believes the Defendants named waived these claims and should be estopped from trying to assert the same.

58. Other than the Defendants named, Santee Cooper knows of no other parties who may have a valid claim to the Equipment in South Carolina.

59. Therefore, Santee Cooper has full and sole title to the Equipment in South Carolina.

60.     Accordingly, Santee Cooper seeks an order of this Court declaring the Equipment is owned by Santee Cooper free and clear of any and all claims to it.

**FOR A SECOND CAUSE OF ACTION**
**(Declaratory Judgment as to Westinghouse)**

61.     Santee Cooper repeats and realleges each and every preceding allegation as if repeated verbatim herein.

62.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, District Courts have the power to issue declaratory judgments regarding the rights and legal relations of parties when there is a case of actual controversy.

63.     Pursuant to the business dealings between Westinghouse and Santee Cooper, the statutory and common law of the State of South Carolina, and in equity, title to the Equipment has vested in and resides with Santee Cooper.

64.     These facts create an actual controversy between the parties involving their various rights, liabilities, and legal relations relative to the Equipment.

65.     Accordingly, pursuant to 28 U.S.C. §§ 2201 and 2202, Santee Cooper seeks a declaration that:

(a)     It has all rights, title, and interest to the Equipment, which necessarily includes the Certification Documentation;

(b)     Neither Westinghouse nor any other Defendant has any right, title, or interest to the Equipment;

(c)     Westinghouse has possession of the Certification Documentation and the same shall be delivered to Santee Cooper; and

  (d) Santee Cooper is entitled to the entire proceeds from any sale of the Equipment.

## FOR A THIRD CAUSE OF ACTION
### (Declaratory Judgment as to Brookfield)

66. Santee Cooper repeats and realleges each and every preceding allegation as if repeated verbatim herein.

67. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, District Courts have the power to make declaratory judgments regarding the rights and legal relations of parties when there is a case of actual controversy.

68. Pursuant to the business dealings between Westinghouse and Santee Cooper, the statutory and common law of the State of South Carolina, and in equity, title to the Equipment has vested in and resides with Santee Cooper.

69. The facts as set forth herein create an actual controversy between the parties involving their various rights, liabilities, and legal relations relative to the Equipment.

70. It appears Brookfield may be attempting to assert an ownership interest in the Equipment.

71. To the extent Brookfield claims it has any ownership interest in the Equipment or any ownership interest in any entity claiming ownership in the Equipment, pursuant to 28 U.S.C. §§ 2201 and 2202, Santee Cooper seeks a declaration that:

  (a) It has all rights, title, and interest to the Equipment, which necessarily includes the Certification Documentation;

  (b) Neither Brookfield nor any other Defendant has any right, title, or interest to the Equipment;

(c) To the extent Brookfield has possession of the Certification Documentation, the same shall be delivered to Santee Cooper; and

(d) Santee Cooper is entitled to the entire proceeds of the sales of any of the Equipment.

**WHEREFORE**, Santee Cooper requests this Honorable Court:

a. Declare the title to all Equipment including the Certification Documentation is owned by Santee Cooper;

b. Declare any and all proceeds from any and all sales of the Equipment procured by Westinghouse or Brookfield is the property of Santee Cooper; and

b. Award such other and further relief as it deems just and proper.

Respectfully submitted,

**GALLIVAN, WHITE & BOYD, P.A.**

s/ *John T. Lay, Jr.*
John T. Lay, Jr. (Fed. Bar No. 5539)
Gray T. Culbreath (Fed. Bar No. 5647)
Amy L.B. Hill (Fed. Bar No. 7696)
Lindsay A. Joyner (Fed. Bar No. 11557)
Jordan Crapps (Fed. Bar No. 12418)
1201 Main Street, Suite 1200
Post Office Box 7368 (29202)
Columbia, SC 29201
(803) 779-1833 (Ofc)
(803) 779-1767 (Fax)
jlay@gwblawfirm.com
gculbreath@gwblawfirm.com
ahill@gwblawfirm.com
ljoyner@gwblawfirm.com
jcrapps@gwblawfirm.com
***Attorneys for the South Carolina Public Service Authority***

**SOUTH CAROLINA PUBLIC SERVICE AUTHORITY**

J. Michael Baxley, Sr. (Fed. Bar No. 1248)
Post Office Box 2946101
Moncks Corner, SC 29461
843.761.7081 (direct)
Mike.Baxley@santeecooper.com

Columbia, South Carolina
May 14, 2019

15